## Case No. 11,084.

### The PHILADELPHIA.

[Olc. 216.] [1]

District Court, S. D. New York. Nov., 1845.

SEAMEN'S WAGES—LEAVING VESSEL AT FOREIGN PORT—CONSENT OF MASTER—REINSTATEMENT OF CONTRACT—WORKING PASSAGE.

1. A seaman leaving a ship at a foreign port during her voyage, with or without leave, and not returning within a reasonable time before another man is hired in his place, forfeits the wages then due him.

[Cited in The John Martin, Case No. 7,357.]

2. If he abandons the ship by consent of the master, such mutual agreement annuls the shipping contract between them, and the seaman cannot afterwards reclaim his place on board the ship. The master may be subject to penalties or the ship to a charge of extra wages, by positive law, for abandoning or leaving a seaman in a foreign port, but this does not reinstate the shipping contract.

3. After a mariner has voluntarily left his vessel in a foreign port without leave of the officer in command, and his place has been supplied by another, he cannot acquire a right to be reinstated and to wages, by coming clandestinely on board, and remaining concealed from her officers until she is out at sea.

[Cited in Allen v. Hallet, Case No. 223.]

4. The master, under such circumstances, is authorized to compel him to work his passage whilst he continues with the ship, and no engagement to pay him wages can be implied therefrom.

[1] [Reported by Edward R. Olcott, Esq.]

5. When a seaman receives payment for wages during an outward voyage apparently equal to, and rather exceeding the amount due, and afterwards, without demanding further payment, voluntarily leaves the vessel, and on her return to her home port brings suit against her for wages for the full voyage, the court will not order a reference to compute the exact state of his claim when he abandoned the vessel, but will dismiss the libel, with costs, against him.

This libel was filed in rem for the recovery of wages. It alleges that the libellant shipped at New-York, on board the ship Philadelphia, to perform a voyage to Hamburgh and back to New-York, at $15 per month. That he entered into her service the 2d day of May, 1845, and continued on board until after arrival at Hamburgh and her return to New-York. The defence in the cause offered by the respondent was, that the libellant deserted the ship during the voyage, and was never afterwards received into her service, and that all right to wages, if any were due, was thereby forfeited. On the 24th June the libellant left the ship to avoid, as he asserted, being arrested by the police of Hamburgh, for a previous desertion from a Russian vessel. Two of the seamen testified that he asked leave of the mate to go ashore, and that the mate gave him leave, directing him to be sure to come back again; and that libellant engaged to come on board, if not before, when the vessel went down the river to Coxaven. The mate testified that he never gave the libellant permission to go ashore; that he left the ship in the absence of the master, and without leave of him, the mate. Proof of the declarations of the libellant also were given to corroborate the mate's testimony. The mate further testified that he entered the name of the libellant the day he left the ship, on a slate, (the log-book being on shore,) as absent without leave; and when the log-book was brought back to the vessel, he transcribed into it the entry made on the slate. The log-book having that entry in it was offered in evidence to prove the desertion of the libellant, and was objected to as incompetent evidence. It further appeared that the libellant got on board the ship in Coxaven harbor, in the night of the 5th July, without the knowledge of any of the officers, and secreted himself there; and after the ship had got under way, and was twenty-five miles at sea, he made his appearance on deck, and that was the first knowledge the officers had of his being in the ship. One of the seamen testified that he met the libellant in Hamburgh some days after he left the vessel, and at his request, told the master the libellant would join the ship again at Hamburgh, or down the river, and wished his clothes should not be sent ashore. The steward swore he was present at that conversation, and the master told the sailor he would not consent to the libellant's coming on board again. The mate testified that men were shipped at Hamburgh to sup-

ply the places of several of the crew, including the libellant, who had left, and one more in number than the ship took out. He and the steward also swore that when the libellant first showed himself to the master at sea, he was told by the master that his things were all sent on shore at Hamburgh. He replied he did not ask for them, he only wanted a passage to New-York. The master then told him he must work for it, and he answered he was willing to do so.

G. Gifford, for the libellant, contended that no statute forfeiture was proved, and none under the marine law, and cited Curt. Merch. Seam. 134; Cloutman v. Tunison [Case No. 2,907].

H. Nicholl, for claimant, cited Douglass v. Eyre [Case No. 4,032]; 20 Wend. 72.

BETTS, District Judge. Without passing upon the competency and sufficiency of the proof offered to establish a desertion at Hamburgh, and the consequent forfeiture of wages to that time, with those demanded by the claimant to the arrival of the vessel in this port, I shall place my decision chiefly upon the other ground of defence, that after the libellant had voluntarily separated himself from the ship and her voyage, even if with the assent of the master, he had no right to reclaim and resume his place on board at his own option, and thus render the ship liable to him as on a contract of hiring.

The libellant intentionally absented himself from the vessel from the 24th of June to the night of the 5th of July. If he received permission from the mate to go ashore, it was a limited one, and under orders to return immediately to the vessel. The mate denies he gave him any leave of absence, and testified that the libellant went off without his knowledge, and when the master was not on board. This statement is contradicted by the testimony of some of the crew, but is satisfactorily corroborated by others, and the result of the whole evidence shows that the libellant went from the ship of his own will, without authority of the mate or the knowledge of the master. His wilful absence that period of time, in a foreign port, without offering to return to his duty, must be deemed intended to be a final leaving of the ship on his part (Cloutman v. Tunison [Case No. 2,907]; 1 Hagg. Adm. 163); and if assented to by the officers, would only render it a leaving or discharge by mutual consent. It is this aspect of the case which will be mainly considered. The penalty of forfeiture of wages incurred by a wilful desertion, or unauthorized continuation of an absence originally permitted, inflicted by the maritime law, or under the United States statute, could only apply to his previously earned wages, and will afford no defence against the main claim in this action. Had he then left the ship on mutual agreement with the master, he could not make him-self one of the crew again without the assent of the master; the shipping contract being rescinded by consent of both parties, cannot be reinstated by an after offer of the seaman to perform it on his part. A fair and honest offer of his services to the ship a reasonable time before she sailed from Hamburgh, or before another man had been shipped in his place, would not have compelled the master to receive him; his case would have stood upon an entirely different footing from that of a deserter returning penitently to the ship, and proposing a submission to her authority, or that of a wrongdoer, who had been expelled the ship by the master for misconduct on board. In either of these cases, the law, upon the subsequent and full submission of the seaman, may interpose, and exact from the master a condonation of the offence, and a restoration of the seaman to his place in the ship. Curt. Merch. Seam. 150. The master may also, by positive law, be subject to damages or penalties for leaving a seaman abroad, or even discharging him by his consent (Act Feb. 28, 1803, § 3 [2 Stat. 203]; Abb. Shipp. 147, and notes); but that liability rests on other grounds than that the contract still subsists between the mariner and the ship. The principle and purpose of the rule is to control the punitive power of the master in relation to the misconduct or negligence of seamen, and to coerce the exercise by him of the pardoning power in cases equitably and fairly entitled to claim it, and with a leniency and liberality adapted to the dispositions and capacities of seamen, as well as the quality and effect of their wrongful conduct towards the ship. Whitton v. The Commerce [Case No. 17,604]; Abb. Shipp. 147, and notes.

What the libellant could not secure to himself by an open offer to return to the vessel, he cannot effect surreptitiously. His entry clandestinely on board, and secreting himself there without the knowledge of the master, does not restore him again to the service of the ship, and entitle him to demand the place and privileges of one of the crew. His desertion from the ship, or agreement with the master to leave her, annulled the contract he had made with her owners, and a new engagement would be necessary to clothe him with any rights against the vessel for after services on board. Those rights result from contract, express or implied, and the mere rendition of services under circumstances negativing the idea that they were voluntarily accepted by the master, or with a view to the benefit of the ship, will lay no foundation for a claim of compensation against her or the master. The evidence is clear that the master ordered the libellant to work his passage, in order to indemnify the owners for the expense imposed upon the ship by his unauthorized and unjustifiable intrusion on board. The ship was out at sea when he exhibited himself to the master, and could not then be freed from him. The

master could rightfully have enforced this service upon him without his consent; but I think there is sufficient evidence that the libellant freely agreed to comply with that order. He was told his place was supplied by another, that his services were not wanted, and that his clothes and effects were sent ashore at Hamburgh. He replied he did not ask for them, and only wanted a passage to New-York. This sufficiently establishes the consent of the libellant to do duty on board in satisfaction of his pasasge. and not in the character of one of the ship's crew. He had received, as it appears, in pay and hospital money, when he left the ship. $26 80. and his wages on the outward voyage amounted to only $26 50. On this statement of the account he had been already overpaid. In this point of view there would be nothing for the forfeiture to act upon beyond the contract, if he is held to have incurred one. A more exact computation may possibly show there was still a balance in his favor, but as no such balance was claimed at the time by him, I do not consider it advisable to send the case to a commissioner on that inquiry, as, independent of the right of forfeiture, the claimant would more than extinguish the balance. if any is found due, by the costs to be decreed against the libellant. I shall, therefore, order the libel dismissed. with costs.

---

PHILADELPHIA (GIRARD v.). See Case No. 5,459.

PHILADELPHIA (MURTAGH v.). See Case No. 9.969.

PHILADELPHIA (SUMNER v.). See Case No. 13,611.

PHILADELPHIA. The (THOMPSON v.). See Case No. 13,973.

PHILADELPHIA (VIDAL v.). See Case No. 16,939.